UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
LENNETT E.,

                    Plaintiff,       <u>DECISION AND ORDER</u>
                                                1:24-cv-01831-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In September of 2021, Plaintiff Lennett E.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications.  Plaintiff, represented by Legal Services of the Hudson Valley, Mary Grace Ferone, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 10).

This case was referred to the undersigned on October 8, 2024. Presently pending is Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 14). For the following reasons, Plaintiff's motion is due to be granted and this case is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on September 17, 2021, alleging disability beginning April 1, 2018. (T at 302-20).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on March 23, 2023, before ALJ Vincent Cascio. (T at 43-67). Plaintiff appeared with an attorney and testified. (T at 49-59). The ALJ also received testimony from Kim Williford, a vocational expert. (T at 61-66).

### B.    ALJ's Decision

On April 18, 2023, the ALJ issued a decision denying the applications for benefits. (T at 7-30).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2018 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2019 (the date last insured). (T at 12).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

The ALJ concluded that Plaintiff's degenerative disc disease of the cervical spine; degenerative disc disease of the thoracic spine; degenerative disc disease of the lumbar spine; degenerative joint disease of the right shoulder; carpal tunnel syndrome; asthma; obesity; bi-polar disorder; depression; post-traumatic stress disorder; and generalized anxiety disorder were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 14).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can occasionally climb ramps and stairs; but never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and kneel; but never crawl; she can tolerate no exposure to extreme heat and humidity, unprotected heights, or hazardous machinery; she can frequently reach, including overhead, with her right upper extremity; frequently handle and finger with her upper extremities, bilaterally; and must avoid exposure to respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. (T at 15-16).

The ALJ further found that Plaintiff can understand, remember, and carry out simple, routine, repetitive work-related tasks, with only occasional contact with the public, co-workers, and supervisors, and concluded that she could work in a low-stress job, defined as requiring only occasional decision making and no more than occasional changes in the workplace. (T at 16).

The ALJ concluded that Plaintiff could not perform her past relevant work as a babysitter. (T at 22).  However, considering Plaintiff's age (41 on the alleged onset date), education (limited), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 23).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between April 1, 2018 (the alleged onset date) and April 18, 2023 (the date of the ALJ's decision). (T at 24).

On January 31, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on March 11, 2024. (Docket No. 1).  On July 19, 2024, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 14).  The Commissioner interposed a brief in opposition to the motion and in support of a request for judgment on the pleadings on September 18, 2024. (Docket No. 15).

## II.  APPLICABLE LAW

A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*,

562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has
> a "severe impairment" which limits his or her mental or physical
> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner
> must ask whether, based solely on medical evidence, claimant
> has an impairment listed in Appendix 1 of the regulations. If the
> claimant has one of these enumerated impairments, the
> Commissioner will automatically consider him disabled, without
> considering vocational factors such as age, education, and
> work experience.
>
> 4. If the impairment is not "listed" in the regulations, the
> Commissioner then asks whether, despite the claimant's severe
> impairment, he or she has residual functional capacity to
> perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the
> Commissioner then determines whether there is other work
> which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one primary argument in support of her request for reversal of the ALJ's denial of benefits.  Plaintiff contends that the ALJ's assessment of the medical opinion evidence is not consistent with applicable law or supported by substantial evidence.

*A. Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, the record contains multiple medical opinions regarding Plaintiff's physical and mental limitations.  The Court will address these opinions, and the ALJ's consideration of them, in turn.

### 1. Physical Limitations

In April of 2019, Andres Jimenez, a nurse practitioner, wrote a letter advising that Plaintiff was being treated for cervical spine pain, lumbar and sacral pain, neuropathy, and carpal tunnel syndrome and opining that Plaintiff should avoid bending; prolonged standing, sitting, or walking; and repetitive movements of her hands, arms, and neck. (T at 539).

In June of 2019, Dr. Khaled Ahmed, a treating physician, wrote a letter advising Plaintiff to limit bending and gross movement of her back and hands bilaterally. (T at 586).

In July and September of 2019, Octavian Mihai, a treating physician's assistant, reported a diagnosis of radiculopathy of the lumbar region and opined that Plaintiff could not lift, push, or pull more than 5 pounds; could not sit or stand for more than 20 minutes, and could not perform repetitive hand movements. (T at 594-95).

Dr. Michael Healy performed a consultative examination in February of 2022.  He diagnosed lower back pain (probable lumbar spinal intervertebral disc disruption), mild neck pain (probable cervical spinal intervertebral disc disruption or other degenerative condition), previous carpal tunnel release of the left wrist, and chronic nystagmus. (T at 782). Dr. Healy opined that Plaintiff should "probably avoid activities requiring functional vision" and would have moderate to marked limitation with respect to standing, walking, bending, lifting, and climbing stairs. (T at 782).

In March of 2022, Dr. A. Saeed, a non-examining State Agency review consultant, opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (T at 90-91). Dr. Saeed assessed no postural and manipulative limitations but found that Plaintiff should avoid concentrated exposure to extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. (T at 91-92).  Dr. C. Li, another State Agency consultant, assessed the same limitations in May of 2022. (T at 117-19).

As noted above, the ALJ concluded that Plaintiff retained the RFC to perform a reduced range of light work. (T at 15-16).  In reaching this conclusion, the ALJ found the opinions of Ms. Jimenez, Dr. Ahmed, and Dr.

Healy "somewhat" persuasive. (T at 19-20).  The ALJ considered the opinions provided by Ms. Mihai to be unpersuasive. (T at 20).  The ALJ found the opinions of Dr. Saeed and Dr. Li persuasive but concluded that Plaintiff had additional postural and manipulative limitations. (T at 19).

The Court finds that the ALJ's assessment of the medical opinion evidence regarding Plaintiff's physical limitations must be revisited on remand.

"The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8–hour workday, with sitting occurring intermittently during the remaining time." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir.2009).

Here, the ALJ concluded that Plaintiff could meet the demands of a reduced range of light work, but did not perform an assessment of her work-related abilities on a function-by-function basis.

Before determining a claimant's RFC based on exertional levels (sedentary, light, medium, heavy, or very heavy), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945.

The work-related functions include physical abilities (standing, sitting, walking, lifting, carrying, pushing, pulling), mental abilities (understanding, remembering, carrying out instructions, and responding to supervision), and other abilities that may be impacted by impairments (seeing, hearing, ability to tolerate environmental factors). *See* SSR 96-8P; *see also* 20 C.F.R. § 404.1545(b)-(d); id. § 416.945; *Cichocki*, 729 F.3d at 176.

Although the Second Circuit has not applied a per se rule requiring remand in cases where ALJ did not provide an explicit function-by-function analysis—*see Cichocki*, 729 F.3d at 176; *compare Burrows v. Barnhart*, No. 3:03CV342, 2007 WL 708627, at *13 (D. Conn. Feb. 20, 2007)("[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce [ ] a detailed statement in writing"), *with McMullen v. Astrue*, No. 5:05-cv-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) (remanding because "the ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis")— "remand [however] may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichock*i, 729 F.3d at 177.

In the present case, all the treating and examining providers assessed significant limitation in Plaintiff's ability to engage in prolonged standing and walking, including Dr. Healy (the consultative examiner), who assessed moderate to marked limitation as to these functions. (T at 539, 595, 782). The ALJ did not make an explicit finding regarding Plaintiff's ability to stand or walk, but generally discounted the treating and examining assessments as inadequately supported and inconsistent with his reading of the record and characterization of the treatment. This was error.

The ALJ is a layperson and, therefore, should not assume "the mantle of a medical expert." *Balotti v. Comm'r of Soc. Sec*., No. 20-CV-8944 (RWL), 2022 WL 1963657, at \*6 (S.D.N.Y. June 6, 2022)(quoting *Amarante v. Comm'r of Soc. Sec*., No. 16-CV-0717, 2017 WL 4326014 at \*10 (S.D.N.Y. Sept. 8, 2017); *see also Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020).

It is "well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . .. While an [ALJ] is free to … choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.

1998)(quoting *McBrayer v. Secretary of Health and Human Servs*., 712

F.2d 795, 799 (2d Cir. 1983) (alterations in original).

Here, the ALJ found the treating and examining opinions inconsistent

with the "conservative" course of treatment.  (T at 20).  In so doing, the ALJ

placed undue emphasis on the fact that surgery was not recommended in

characterizing Plaintiff's treatment as "conservative," particularly since she

received epidural injections, pain medication, and physical therapy. *See*

*Diaz v. Astrue*, No. 08cv5006 (JG), 2009 WL 2601316, at *5 (E.D.N.Y. Aug.

24, 2009)(finding characterization of treatment as "conservative" to be

"problematic," because there was "no indication that some more intensive

course of treatment should have been pursued if [claimant's] ailments were

as severe as he alleged"); *see also Burgess v.* Astrue, 537 F.3d 117, 129

(2d Cir. 2008) (ALJ may not impose his own "'notion[ ] that the severity of a

physical impairment directly correlates with the intrusiveness of the medical

treatment ordered'")(quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.

2000)).

In addition, the ALJ erred by considering the treating and examining

opinions in isolation, finding each inconsistent with his reading of the record

without accounting for the significance of their consistency with *each other*.

*See Shawn H. v. Comm'r of Soc. Sec*., No. 2:19-CV-113, 2020 WL

3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Lastly, the ALJ erred by discounting the treating and examining providers' opinions as vague and/or otherwise insufficiently detailed without further development of the record.  (T at 19-20).

Given the consistent conclusion of the treating and examining providers regarding restriction in Plaintiff's ability to perform key functions of light work (including, in particular, with respect to prolonged standing and walking), it was error for the ALJ to discount the medical opinions without first attempting to recontact the providers to obtain that information. *See Piscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016)("Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed

light on the import of their opinions and the conflicts the ALJ identified.");
*see also Plaza v. Comm'r of Soc. Sec*., No. 19CV3853 (DF), 2020 WL
6135716, at *23 (S.D.N.Y. Oct. 16, 2020)(finding that ALJ erred when he
"substituted his lay opinion for that of the treating physician without first re-
contacting the treater for clarification of any perceived inconsistencies
between the doctor's opinions and the underlying clinical record").

     In sum, the ALJ failed to assess Plaintiff's capacity to perform
relevant work-related functions, despite contrary evidence in the record
(including the assessments from the treating and examining providers), and
with inadequacies in his analysis, as outlined above, that frustrate
meaningful review.  A remand, therefore, is required. *See Gomez v. Saul*,
No. 1:19-CV-04708 (ALC), 2021 WL 1172674, at *13 (S.D.N.Y. Mar. 29,
2021).

### 2. Mental Limitations

     Dr. Melissa Antiaris performed a consultative psychological
evaluation in February of 2022.  She diagnosed bipolar II disorder;
unspecified stressor and trauma-related disorder; and substance abuse
disorder in full remission. (T at 776).

     Dr. Antiaris opined that Plaintiff had no limitation in her ability to
understand, remember, or apply simple directions or instructions; moderate

impairment as to understanding, remembering, or applying complex directions or instructions; moderate limitation in her ability to use reason and judgment to make work-related decisions and interact adequately with supervisors, co-workers, and the public; moderate impairment with respect to sustaining an ordinary routine and regular attendance; moderate limitation as to sustaining concentration and pace; marked impairment as to regulating emotions, controlling behavior, and maintaining well-being; mild limitation in maintaining hygiene, and appropriate attire; and mild impairment being aware of normal hazards and taking appropriate precautions. (T at 776).

In March of 2022, Dr. M. Juriga, a non-examining State Agency review consultant, found that there was insufficient evidence to assess the severity of Plaintiff's mental impairments before her date last insured. (T at 76). Dr. Juriga opined that since September 17, 2021 (when she applied for benefits), Plaintiff retained the RFC to meet the basic mental demands of unskilled work on a regular basis. (T at 97). In May of 2022, Dr. M. Butler reached essentially the same conclusions, but also limited Plaintiff to no more than brief and superficial social interaction. (T at 113, 124).

In October of 2022, Mamadou Diallo, a treating social worker, completed a psychiatric functional assessment, which was co-signed by

Esther Tarquino, a psychiatric nurse practitioner.  They documented

diagnoses of bipolar disorder, current episode, mixed moderate;

generalized anxiety disorder; and post-traumatic stress disorder. (T at 830).

Mr. Diallo and Ms. Tarquino reported numerous limitations in

Plaintiff's ability to meet the mental demands of basic work activity,

including extreme limitation in her ability to understand and learn terms,

instructions, and procedures; extreme impairment as to understanding and

solving problems, using reason and judgment to make work-related

decisions, sequencing multi-step activities, and remembering locations. (T

at 831-32).  They opined that Plaintiff had extreme limitation with respect to

several aspects of social interaction; marked impairment in completing

tasks in a timely manner and sustaining an ordinary routine without special

supervision; extreme limitation with respect to performing at a consistent

pace without interruption from symptoms or an unreasonable number of

breaks; and extreme impairment as to working in coordination with or

proximity to others without being unduly distracted. (T at 832-33).

Mr. Diallo and Ms. Tarquino believed Plaintiff would be absent or late

for work more than 4 days per month because of symptoms or treatment.

(T at 833).  They assessed marked or extreme impairment in Plaintiff's

ability to adapt or manage herself. (T at 833).  Mr. Diallo and Ms. Tarquino reported that Plaintiff's symptoms fluctuate. (T at 835).

Mr. Diallo also provided a letter dated March 16, 2023, in which he explained that Plaintiff had been treating at the Westchester Center of Excellence since May of 2019, with Mr. Diallo treating Plaintiff since April of 2022. (T at 828).  He noted the following diagnoses: bipolar disorder, current episode mixed moderate; chronic post-traumatic stress disorder; generalized anxiety; and major depressive disorder. (T at 828).  Mr. Diallo opined that Plaintiff would not be able to maintain work due to an inability to manage her stress, be punctual, be organized, and socialize appropriately. (T at 828-29).

The ALJ found the opinions of Dr. Juriga and Dr. Butler persuasive, although, unlike the review physicians, the ALJ determined there was sufficient evidence to support the existence of medically determinable mental impairments prior to the date last insured. (T at 20-21).

The ALJ considered Dr. Antiaris's opinion unpersuasive, finding it inconsistent with the treatment notes (including Dr. Antiaris's own examination findings), with Plaintiff's activities of daily living, and with the conservative course of treatment. (T at 21).  The ALJ found the opinions of Mr. Diallo and Ms. Tarquino unpersuasive, concluding that they were

inconsistent with the treatment notes, activities of daily living, and conservative course of treatment and unsupported by detailed clinical findings. (T at 21-22).

The Court concludes that this aspect of the ALJ's decision also must be revisited on remand.  As with the physical limitations, every medical provider who examined or treated Plaintiff concluded that she had marked or extreme limitations.  The ALJ considered each opinion in isolation, without accounting for the significant consistency between the treating and examining opinions, particularly with respect to Plaintiff's ability to regulate her emotions, sustain a schedule, and maintain attendance.  This was error. *See Malia Ann B.*, 2023 WL 2838054, at *7.

Further, the ALJ discounted Mr. Diallo's assessments because he "did not have the opportunity view and consider the entire medical record before forming an opinion," while finding persuasive the State Agency review consultants' opinions even though neither of the consultants had the opportunity to review the assessments subsequently provided by Mr. Diallo and Ms. Tarquino. (T at 21).

In addition, the ALJ's decision to discount the treating and examining providers' assessments was not based on a reasonable reading of the record.

Although Plaintiff was generally cooperative and coherent during clinical visits, she was consistently described as depressed, anxious, and with impaired memory and concentration. (T at 1159, 1161-62, 1168, 1170, 1175, 1179, 1184, 1187,1194, 1201, 1208). *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 10 (2d Cir. 2020)(cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

The ALJ overrated the relevance of Plaintiff's ability to maintain appropriate attendance and affect during relatively brief, relatively infrequent (weekly or monthly) encounters with supportive mental health professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ.

6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Lastly, the ALJ overrated the significance of Plaintiff's ability to engage in a limited range of activities of daily living, which included personal care, light household chores, childcare, and some leisure activities. (T at 775, 780, 925).

A claimant "need not be an invalid to be found disabled" and should not be punished for exerting the effort to attend to basic necessities of life. *See Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998).  In addition, as discussed above, the treatment record documents significant symptoms persisting over time.  In this context, some waxing and waning of symptoms is to be expected and Plaintiff's ability to periodically push beyond her ordinary limitations does not translate into an ability to perform competitive work on a consistent basis. *See Estrella*, 925 F.3d at 97; *Samaru v. Comm'r of Soc. Sec*., No. 18-cv-06321(KAM) (LB), 2020 U.S. Dist. LEXIS

100141, at *30 (E.D.N.Y. June 8, 2020)("The critical differences between activities of daily living and activities in a full time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by an employer.")(quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

For these reasons the medical opinion evidence regarding Plaintiff's mental impairments must be revisited on remand.

### B. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court finds a remand necessary for proper consideration of the medical opinion evidence regarding Plaintiff's physical and mental limitations.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED; the Commissioner's decision is REVERSED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of Plaintiff and then close the file.


Dated: November 25, 2024                    *s/ Gary R. Jones*
                                            GARY R. JONES
                                            United States Magistrate Judge